945 F.2d 150
 20 Fed.R.Serv.3d 1177, 21 Envtl. L. Rep. 21,472
 MICHIGAN COALITION OF RADIOACTIVE MATERIAL USERS, INC.,
Plaintiff-Appellee,
v.
Jerry GRIEPENTROG, Director of Resources; Christine
Gregoire, Director of the Washington Department of Ecology;
John P. Pate, Chairman of the South Carolina Board of Health
and Environmental Control, Defendants-Appellants.
 No. 91-1801.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Aug. 8, 1991.
Decided Sept. 24, 1991.
 
 Charles J. Cooper, David R. Lewis, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., Max R. Hoffman, Jr., Richard C. Kraus, Farhat, Story & Kraus, Charles R. Toy, East Lansing, Mich., Michael S. Green, House Republican Programs & Policies, Lansing, Mich., for plaintiff-appellee.
 David J. Bloss, Roberts, Betz & Bloss, Grand Rapids, Mich., Frankie Sue Del Papa, Nancy Ford Angres, Atty. General's Office, Dept. of Human Resources, Carson City, Nev., for Jerry Griepentrog, Director, of the Nevada Dept. of Human Resources.
 David J. Bloss, Roberts, Betz & Bloss, Grand Rapids, Mich., Allen T. Miller, Jr. (briefed), Olympia, Wash., Kenneth O. Eikenberry, Atty. General's Office, State of Wash., Olympia, Wash., for Christine Gregoire, Director, of the Washington Dept. of Ecology.
 David J. Bloss, Roberts, Betz & Bloss, Grand Rapids, Mich., Walton J. McLeod, III, Samuel L. Finklea, III, Dept. of Health & Environmental Control, Office of Gen. Counsel, T. Travis Medlock, James Patrick Hudson, Atty. General's Office, Columbia, S.C., for John P. Pate, Chairman, of South Carolina Bd. of Health and Environmental Control.
 Before MARTIN and NELSON, Circuit Judges; and JARVIS, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The defendants in this action have filed a motion pursuant to Fed.R.App.P. 8(a) seeking a stay of the judgment and a permanent injunction pending their appeal of the district court's grant of summary judgment in favor of the plaintiff. 769 F.Supp. 999. For the reasons outlined below, we hereby grant the stay. This opinion will clarify the standards we apply in reviewing an application for a stay of judgment pursuant to Fed.R.App.P. 8(a).
 
 
 2
 The defendants are heads of agencies delegated by the states of Nevada, Washington, and South Carolina, to administer the operation of low-level radioactive waste disposal sites located in these states. There are only three such sites in the United States: the Beatty site in Nevada, the Richland site in Washington, and the Barnwell site in South Carolina. These "sited states", as they are called, objected to the handling of low-level nuclear waste generated by other states and attempted to restrict access to their disposal systems. Congress responded by passing the Low-Level Radioactive Waste Policy Act in 1980 in an effort to motivate other states to assume some of the burden for disposal of such waste. Because progress was not as rapid as hoped, Congress amended the Act in 1985, adding specific incentives and penalties to encourage other states to develop disposal capacities by December 31, 1992. 42 U.S.C. § 2021b et seq. Pursuant to the scheme established by the amended Act, specifically provisions (b) through (g) of § 2021e, the sited states are required to make their disposal capacity available for low-level radioactive waste from non-sited states for the period between January 1, 1986, through December 31, 1992.
 
 
 3
 In 1990, the defendants concluded that Michigan was not in compliance with the Act and effective November 10, 1990, denied waste generators in Michigan access to their disposal facilities. The plaintiff, the Michigan Coalition of Radioactive Material Users, Inc., is an association whose members engage in the use of radioactive materials and who generate low-level radioactive waste. MICHRAD, as the Coalition calls itself, filed suit seeking declaratory and injunctive relief prohibiting the defendants from denying MICHRAD access to the waste disposal facilities located in the defendants' states. The parties filed cross motions for summary judgment. The district court granted judgment in favor of MICHRAD, finding that Michigan had complied with the requirements of the Act and that the defendants had no authority to deny waste generators in Michigan access to the sited states' facilities prior to January 1, 1993. The district court permanently enjoined the defendants from denying access to disposal facilities in their respective states for disposal of low-level radioactive waste generated in Michigan prior to January 1, 1993. An appropriate appeal has followed.
 
 
 4
 Pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure, 28 U.S.C. Rules, the defendants now request us to issue an order staying the district court's judgment and granting them a permanent injunction. Ordinarily, Rule 8(a) requires that such a motion be made in the first instance in the district court. However,
 
 
 5
 [a] motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that the application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested.
 
 
 6
 Fed.R.App.P. 8(a). In this case, the defendants did file a motion for stay of judgment and permanent injunction pending appeal in the district court. The district court denied both of defendants' motions, concluding that the potential harm to defendants in the absence of a stay is outweighed by public safety concerns in the state of Michigan.
 
 
 7
 In determining whether a stay should be granted under Fed.R.Civ.P. 8(a), we consider the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. See Frisch's Restaurant, Inc. v. Shoney's Inc., 759 F.2d 1261, 1263 (6th Cir.1985); In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir.1985). These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n, 812 F.2d 288, 290 (6th Cir.1987); see also Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 2118-2119, 95 L.Ed.2d 724 (1987) (factors are the same under Fed.R.Civ.P. 62(c) and under Fed.R.App.P. 8(a)). These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together. DeLorean, 755 F.2d at 1229.
 
 
 8
 Although the factors to be considered are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural posture in which each judicial determination arises. Upon a motion for a preliminary injunction, the court must make a decision based upon "incomplete factual findings and legal research." Roth v. Bank of the Commonwealth, 583 F.2d 527, 537 (6th Cir.1978), cert. dismissed, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). Even so, that decision is generally accorded a great deal of deference on appellate review and will only be disturbed if the court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard. NAACP v. City of Mansfield, 866 F.2d 162, 166-167 (6th Cir.1989) (quoting Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.), cert. dismissed, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985)).
 
 
 9
 Conversely, a motion for a stay pending appeal is generally made after the district court has considered fully the merits of the underlying action and issued judgment, usually following completion of discovery. As a result, a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits. In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal. Presumably, there is a reduced probability of error, at least with respect to a court's findings of fact, because the district court had the benefit of a complete record that can be reviewed by this court when considering the motion for a stay.
 
 
 10
 To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits. Ohio ex rel. Celebrezze, 812 F.2d at 290 (citing Cuomo v. United States Nuclear Regul. Comm'n, 772 F.2d 972, 974 (D.C.Cir.1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Id. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. Mason County Medical Ass'n v. Knebel, 563 F.2d 256, 261 n. 4. (6th Cir.1977). For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." DeLorean, 755 F.2d at 1229 (quoting Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir.1982)).
 
 
 11
 In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. Ohio ex rel. Celebrezze, 812 F.2d at 290 (citing Cuomo, 772 F.2d at 977). In evaluating the degree of injury, it is important to remember that
 
 
 12
 [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.
 
 
 13
 Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir.1958)). In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. See Wisconsin Gas Co. v. Federal Energy Regul. Comm'n, 758 F.2d 669, 674 (D.C.Cir.1985). In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again. Id.
 
 
 14
 Of course, in order for a reviewing court to adequately consider these four factors, the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist. Ohio ex rel. Celebrezze, 812 F.2d at 290. This, in turn, develops an adequate record from which we can determine the merits of the motion. Id. at 291. With these standards in mind, we turn to the facts of this case.
 
 Evaluation of the Four Factors
 A. Likelihood of Success
 
 15
 Based upon the record before us, we find that the defendants have demonstrated a sufficient probability of success on the merits. Specifically, we believe the defendants present a compelling argument that the district court erred in finding that it had personal jurisdiction over the various sited state representatives. In its decision concerning the jurisdictional question, the district court concluded that the long-standing business relationship between the plaintiffs and defendants, coupled with the fact that the defendants' actions were felt in Michigan, provided sufficient grounds for jurisdiction. Although we feel it inappropriate at this stage of the proceedings to enter into a detailed discussion of our views of the jurisdictional question, we will identify the source of our reservations.
 
 
 16
 In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court, with respect to interstate contractual obligations, explained that:
 
 
 17
 If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe that the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests, International Shoe Co. v. Washington, [326 U.S. 310, 319, 66 S.Ct. 154, 159-160, 90 L.Ed. 95 (1945) ]....
 
 
 18
 Id. at 478-479, 105 S.Ct. at 2185 (emphasis in original). Likewise, in LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1300 (6th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990), this court found that a defendant did not purposefully avail itself of the privilege of transacting business in the forum state, see Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir.1968), because "[t]he defendant in the case at bar, ... did not 'reach out' to [the forum state] for the purpose of creating 'continuing relationships and obligations' with any citizen of that state." Based upon the record before us, we feel it a close question as to whether the defendants' contacts to Michigan were sufficient "such that [they] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
 
 B. Irreparable Injury
 
 19
 As we stated earlier, the harm alleged should be evaluated in terms of its substantiality, the likelihood of its occurrence, and the proof provided by the movant. Cuomo, 772 F.2d at 977. Furthermore, the harm alleged is considered in light of our earlier discussion concerning the defendants' jurisdictional argument. Ohio ex rel. Celebrezze, 812 F.2d at 290 (a stay may be granted with a high probability of success and some injury). The harm identified by the defendants is that the low-level radioactive waste, once received, must be buried in perpetuity and defendants will be burdened therefore with the responsibility of ensuring perpetual care for the waste. The defendants point out that this harm is also certain to occur because the defendants do not possess adequate short-term storage facilities to store the waste generated by Michigan until the final resolution of their appeal. The amount of waste produced by the plaintiff's members makes up a significant percentage of the waste currently being accepted by the sited states. Thus, we find that this factor weighs in favor of the defendants because of the great likelihood that this storage problem will continue to occur.
 
 C. Harm to Others
 
 20
 We find that the harm to the plaintiff if the stay is issued is relatively slight. Currently, the plaintiff's members are storing their low-level radioactive waste in on-site temporary storage facilities. The plaintiff has not alleged that its members cannot provide the required storage capacity, but merely that they find it inconvenient. In fact, plaintiff admits that some of its members have the storage capacity for some years to come. Plaintiff argues strenuously that having its members house the low-level waste in temporary storage facilities is detrimental to public safety concerns. The fact that the plaintiff's members routinely use these facilities in order to store their waste pending shipment belies this argument. To be sure, public safety concerns would be implicated if, by granting the stay, the plaintiff's members would be forced to use these temporary storage facilities as permanent facilities; here the plaintiff's members will only be required to use these facilities on a temporary basis until the state of Michigan complies with the amendments to the Act. 42 U.S.C. § 2021b et seq.
 
 D. The Public Interest
 
 21
 In the most general sense, the public interest in this case lies heavily in providing safe and environmentally sound management, storage, and disposal of radioactive waste. Indeed, this was the underlying purpose behind the passage of the Low-Level Radioactive Waste Policy Act. In deciding whether or not the stay should be granted, however, our immediate concern is with the current public safety aspects. Ohio ex rel. Celebrezze, 812 F.2d at 292. The plaintiff argues that the public is put at risk if its members are required to store low-level radiation at temporary facilities until the resolution of defendants' appeal. We find no reason to believe that the storage of waste at the plaintiff's members' temporary storage facilities puts the public at a greater risk than it would otherwise face when the waste is stored at these locations pending transport to the defendants' facilities. Undoubtedly, as we noted, the public safety would be implicated if the plaintiff's members were required to store permanently the waste in these temporary facilities. Such, however, is simply not the case. The public safety is not adversely effected by the granting of the stay and, therefore, we conclude that the public interests in the development of long-term disposal sites is controlling.Conclusion
 
 
 22
 Thus, applying the above standards to the facts of this case, it is our belief that the defendants have adequately demonstrated the need for a stay. We grant the defendants' motion that the judgment of the district court requiring the sited states to accept low-level radioactive waste be stayed pending a decision on the merits. The panel of this Court hearing the merits of the appeal will consider the defendants' motion for a permanent injunction.
 
 
 
 *
 The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation