Barbara GRUTTER, Plaintiff,

v.

Lee BOLLINGER, et al., Defendants.

and

Kimberly James, et al., Intervening Defendants.

No. CIV. A. 97–CV75928–D.

United States District Court,
E.D. Michigan,
Southern Division.

April 3, 2001.

Kerry L. Morgan, Pentiuk & Couvreur, Taylor, MI, Kirk O. Kolbo, David F. Herr, Mason, Edelman, Minneapolis, MN, for plaintiff.

Leonard M. Niehoff, Butzel Long, Ann Arbor, MI, John A. Payton, John H. Pickering, Wilmer, Cutler, Washington, DC, Philip J. Kessler, Butzel Long, Detroit, MI, Jane Sherburne, Stuart F. Delery, Wilmer, Cutler, Washington, DC, for Lee Bollinger, Jeffrey Lehman, Dennis Shields, Univ. of Michigan.

Martin Michaelson, Steven J. Routh, Alexander E. Dreier, Hogan & Hartson, Washington, DC, for American Council on Educ.

Jeremiah Glassman, Kathryn M. Woodruff, Kenneth D. Johnson, U.S. Dept. of Justice, Civil Rights Div., Washington, DC, for U.S.

Edward B. Foley, Ohio Depart. of Attorney General, Columbus, OH, for State of Ohio.

Richard A. Wilhelm, Dickinson, Wright, Bloomfield Hills, MI, for Association of American Law Schools, National Association Of State Universities and Land Grant Colleges, Committee on Institutional Corporation, Wayne State University.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY INJUNCTION

FRIEDMAN, District Judge.

This matter is presently before the court on defendants' motion to stay injunction. Plaintiffs have filed a response in opposition. For the following reasons, the motion is denied.

In an opinion and order dated March 27, 2001, the court found that the University of Michigan Law School has violated the Equal Protection Clause and Title VI of the Civil Rights Act of 1964 by using race as a factor in considering applications for admission. *See Grutter v. Bollinger*, 137 F.Supp.3d 821 (E.D.Mich.2001). Accordingly, the court ordered that the law school "is hereby enjoined from using applicants' race as a factor in its admissions decisions." *Id.* at 871. Defendants have indicated that they intend to appeal the court's decision. In the instant motion, defendants ask that the court stay the injunction pending appeal. The intervenors concur in the motion; plaintiffs oppose it.

*Legal Standards*

■ A motion to stay an injunction pending appeal is governed by Fed. R.Civ.P. 62(c), which states:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party....

In deciding such a motion, the court considers the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The Sixth Circuit has provided considerable guidance as to how these factors should be weighed:

> These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.

> Although the factors to be considered are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural posture in which each judicial determination arises. Upon a motion for a preliminary injunction, the court must make a decision based upon "incomplete factual findings and legal research." Even so, that decision is generally accorded a great deal of deference on appellate review ....

> Conversely, a motion for a stay pending appeal is generally made after the district court has considered fully the merits of the underlying action and issued judgment, usually following com-

pletion of discovery. As a result, a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits. In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal. Presumably, there is a reduced probability of error, at least with respect to a court's findings of fact, because the district court had the benefit of a complete record that can be reviewed by this court when considering the motion for a stay.

To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits. The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided.... In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical....

Of course, in order for a reviewing court to adequately consider these four factors, the movant must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist.

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153–54 (6th Cir.1991) (citations omitted). "Because the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied." 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2904, pp. 503–505 (1995).

### Application

Defendants first argue that "there is a reasonable possibility that Defendants' position will ultimately prevail." Defendants' Mem. of Law in Support of Motion to Stay Injunction, p. 4. "Reasonable possibility" is not the standard. Rather, as noted above, defendants must make a "strong showing" that they are likely to succeed on the merits; they must, at a minimum, demonstrate the existence of "serious questions going to the merits."

■ Defendants have failed to demonstrate the existence of "serious questions going to the merits." While the status of Justice Powell's endorsement of the diversity rationale is debatable, the court is convinced that in Part IV–D of his opinion in *Regents of the Univ. of Cal. v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), Justice Powell was speaking only for himself, not for a majority of the Supreme Court. A majority of the Court has never recognized racial diversity in university admissions as a compelling state interest. And as this court noted in its March 27, 2001, opinion, post-*Bakke* Supreme Court decisions cast further doubt on the constitutionality of any use of race that is not strictly remedial. *See Grutter,* 137 F.Supp.2d at 847.

The cases cited by defendants are not to the contrary. *Oliver v. Kalamazoo Bd. of Educ.,* 706 F.2d 757 (6th Cir.1983), was a school desegregation case in which the district court imposed a racial hiring quota for teachers as part of the remedy for the intentional racial segregation of students. The court of appeals reversed on the grounds that the quota was arbitrary and because the school district was acting in good faith to remedy the effects of past discrimination. *See id.* at 762–63. In dictum, the court stated that hiring quotas as not *per se* improper, but "generally, the wiser approach is a more flexible affirmative action program rather than a hiring quota. *Cf. Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (affirmative action admission programs of educational institutions may take race into account, but racial quotas are prohibited)." *Id.* at 763. Nothing in *Oliver* supports defendants' argument that diversity in university admissions has ever been recognized as a compelling state interest, or that the Sixth Circuit has held that *Bakke* stands for such a proposition.

Defendants' citation to *United States v. Ovalle,* 136 F.3d 1092 (6th Cir.1998), is equally inapposite. In that case, defendants challenged the manner in which the district court selected qualified jurors for inclusion in the jury wheel. Specifically, defendants challenged the court's practice of removing a certain number of non-African Americans from the wheel in order to bring the African American representation in line with census figures for the counties from which jurors were drawn. The court of appeals found that the creation of a representative jury wheel is a compelling state interest, but that the exclusion of potential jurors simply because of their race violates the Equal Protection Clause as well as the Jury Selection and Service Act. *See id.* at 1100, 1105–07. Again, nothing in *Ovalle* suggests that this court erred in enjoining defendants' consideration of race in making admissions decisions.

Nor are defendants assisted by *Hopwood v. State of Texas,* 236 F.3d 256, 276 (5th Cir.2000), in which the Fifth Circuit reversed the district court's order enjoining the University of Texas School of Law "from taking into consideration racial preferences in the selection of those individuals to be admitted as students." The first reason for the reversal was that the district court failed to make findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a), something which cannot be said of this court's injunction. The second reason for the reversal was that the injunction "forbids the University from using racial preferences for *any* reason, despite *Bakke*'s holding that racial preferences are constitutionally permissible in some circumstances." *Id.* at 276–77 (emphasis in original; footnote omitted). This court's injunction should not be understood as prohibiting "*any and all* use of racial preferences," *id.* at 277 (emphasis in original), but only the uses presented and argued by the defendants and the intervenors in this case—namely, in order to assemble a racially diverse class or to remedy the effects of societal discrimination. No other justifications were offered by the parties to this lawsuit, none others were considered by this court, and none others are enjoined by this court's order.

Even if a higher court rules that assembling a racially diverse class can be a compelling state interest, defendants cannot overcome the overwhelming evidence, and this court's findings based on that evidence, that their use of race is not narrowly tailored to the achievement of that interest. At pages 49–54 of its opinion, the court listed five reasons why the law school's admissions policy is not narrowly tailored. *See Grutter,* 137 F.Supp.3d at 850–51. In their motion to

stay, defendants do not even mention narrow tailoring or suggest why the court's analysis of this prong of the strict scrutiny test is likely to be reversed on appeal. As the Sixth Circuit has observed, defendants' task is more difficult than it would be if they were seeking a stay of a preliminary injunction, as the injunction in question was issued after an exhaustive consideration of the merits. *See Griepentrog,* 945 F.2d at 153.

Defendants next argue that they will be irreparably harmed unless the injunction is stayed. Defendants claim that the admissions process for the current season will be disrupted, that they will be prevented from admitting a racially diverse class, and that their First Amendment rights to academic freedom and the pursuit of educational goals will be infringed.

▮ Defendants' arguments do not satisfactorily establish a certain and immediate threat of irreparable harm. Taking the arguments in reverse order, defendants' First Amendment rights to select the student body and to pursue educational goals are not seriously infringed by an injunction prohibiting the unconstitutional consideration of race in making admissions decisions. In any event, the equal protection rights of all applicants to be considered for admission without regard to their race clearly outweighs the First Amendment rights claimed by the law school.

Defendants' second argument is that the injunction will "thwart[ ] the Law School's ability to enroll a meaningful number of underrepresented minority students, which is critical to its educational mission." Defendants' Mem. of Law in Support of Motion to Stay Injunction, p. 9. This goes to the heart of the case and is in effect an argument for reconsideration of the merits. The court heard extensive testimony during a 15–day bench trial as to the reasons why defendants believe they must consider race in order to admit a critical mass of underrepresented minority students. However, for the reasons explained at length in its March 27, 2001, opinion, the court has concluded that the attainment of a racially diverse class is not a sufficiently compelling interest to justify race-based admissions decisions. The court has found that defendants' use of race is indistinguishable from a quota system, and there is no doubt that racial quotas in this context and for this purpose are unconstitutional. Defendants are not irreparably harmed by an injunction that requires them to comply with the Constitution.

Nor is the court convinced that the law school "will have to halt its entire admissions process immediately" unless a stay is granted. Defendants' Mem. of Law in Support of Motion to Stay Injunction, p. 7. Defendants claim that they cannot predict how many offers they must make under a race-blind system in order to enroll the desired number of students; that they will need "several weeks" to analyze the new situation statistically; and that the best candidates will enroll elsewhere during the delay.

These arguments, which are supported by an affidavit of the acting dean of admissions, are unpersuasive. The court's injunction is simply and easily complied with: race is not to be used as a factor to achieve a racially diverse class or to remedy societal discrimination. Defendants testified at trial that they review every application individually. They should continue to do so, but without considering the race of the applicants. Defendants indicate the immediate urgency is that "[a]pproximately 100 additional offers need to be extended in the next 10 days in order to fill [the summer] section." Defendants' Mem. of Law in Support of Motion to Stay Injunction, p. 8. With their extensive expe-

rience in reviewing law school applications, defendants should have no difficulty identifying 100 excellent candidates within this time frame without considering race. Nor should the law school be unduly hindered in finishing the admissions process for the class entering in the fall of 2001. Defendants indicate they have already made over 750 offers of admission and that approximately 300–450 more offers must be made in order to round out the entering class.[1] The court sees no insurmountable obstacle in completing the admissions process while obeying the injunction.

 The final two factors—the interests of other parties and the public interest— also weigh against granting a stay. Because this is a class action, the plaintiffs are not merely one individual but all non-minority applicants whose applications are reviewed less favorably than those of minority applicants. Clearly, the members of the plaintiff class with pending applications have a strong interest in keeping the injunction in place. There is also a strong public interest in ensuring that public institutions comply with the Constitution.

For these reasons, the court concludes that defendants have failed to demonstrate their entitlement to a stay of the injunction. Defendants have not shown they are likely to succeed on the merits on appeal; defendants have not demonstrated that

they will be irreparably harmed if the injunction is not stayed; and the interest of the other parties and of the public would be harmed by a stay. Accordingly,

IT IS ORDERED that defendants' motion to stay injunction is denied.[2]

1. Defendants indicate they have made 826 offers of admission to date, and that 70 of these are for students who will begin studying in the summer of 2001. Therefore, approximately 756 offers of admission have been made for the class entering in the fall of 2001. Defendants further indicate that they generally must make a total of between 1,050 and 1,200 offers of admission in order to enroll a fall class of 350. Therefore, it appears that between 294 and 444 offers must still be made. The court's injunction does not require the law school to rescind any offers it has already extended.

2. Defendants' alternative request for a 10–day "administrative stay" is also denied. Defen-

dants seek this alternative relief "to permit Defendants an opportunity to file their notice of appeal and seek a stay from the Court of Appeals." Defendants' Mem. of Law in Support of Motion to Stay Injunction, p. 2. Defendants are free at any time to apply to the court of appeals for a stay of this court's injunction. *See* Fed.R.Civ.P. 62(g). Indeed, defendants state in their brief that they intended to file a notice of appeal on April 2, 2001, and to seek a stay from the court of appeals if this court did not grant one by that date. Thus, it does not appear that any purpose would be served by a 10–day stay.