SIMON PROPERTY GROUP, INC. and Simon Property Acquisitions, Inc., Plaintiff(s),

v.

TAUBMAN CENTERS, INC., et al, Defendant(s).

No. 02–74799.

United States District Court, E.D. Michigan, Southern Division.

May 20, 2003.

Order Denying Motion to Modify Order Staying Preliminary Injunction June 9, 2003.

Carl H. von Ende, Todd A. Holleman, Miller, Canfield, Detroit, MI, Tariq Mundiya, Willkie, Farr, New York City, for plaintiffs.

Bernard W. Nussbaum, Michael W. Schwartz, Stephen R. DiPrima, Wachtell, Lipton, New York City, Eugene Driker, Todd R. Mendel, Erica L. Fitzgerald, Barris, Sott, Detroit, MI, Joseph Aviv, Miro, Miro, Bloomfield Hills, MI, Thomas W. Cranmer, Bruce L. Segal, Miro, Weiner, Bloomfield Hills, MI, Matthew F. Leitman, Bloomfield Hills, MI, I.W. Winsten, Raymond W. Henney, Honigman, Miller, Detroit, MI, for defendants.

Charles E. Barbieri, Scott R. Lovernick, Foster, Swift, Lansing, MI, for New York Times Co., Detroit Free Press, Inc., Dow Jones Co., Inc., movants.

Matthew M. Neumeier, Jenner & Block, Chicago, IL, for General Motors Investment Management Corp., GMPTS, L.P., movants.

### ORDER GRANTING STAY OF PRELIMINARY INJUNCTION

ROBERTS, District Judge.

This matter is before the Court on Defendants' Motion to Suspend Injunction Pending Appeal [Doc # 90]. For the reasons stated below, the Court **GRANTS** Defendants' motion.

### I. ARGUMENTS

On May 8, 2003, the Court entered an Order Granting Plaintiffs' Motion for Preliminary Injunction. The Order enjoined Defendants from enforcing the Meeting Delay Amendment to the bylaws of Taubman Centers, Inc. (TCI) and enjoined the Taubman family and signatories of certain voting agreements from voting shares of TCI totaling 33.6%. As a result of this Court's preliminary ruling, Plaintiffs Simon Property Group, Inc. and Simon Property Acquisitions, Inc. (collectively referred to as "Simon") seek to move forward on their bid to acquire all of the outstanding shares of TCI.

Defendants filed a Notice of Appeal of the May 8th Order to the Sixth Circuit Court of Appeals. They request that this Court stay its injunction pending appellate review.

The Taubman family has been vocal in its opposition to Simon's takeover bid and, if allowed to vote their shares, would likely be able to defeat Simon's efforts. Consequently, Defendants assert that if the stay is denied, Defendants could be denied meaningful appellate review; Simon could complete all of the necessary steps to finalize its takeover before the Sixth Circuit reviews Defendants' appeal.

Both Plaintiffs and Defendants have stated their interest in an expedited review of the appeal. Defendants will make a formal request for such a review. Simon asserts that it is unlikely that it could complete a takeover before the Sixth Circuit rules. Moreover, Simon has offered to refrain from taking any "irreversible" steps towards a merger pending appellate review. However, Simon asserts that it should be allowed to: 1) solicit the votes required to call a special meeting; and, 2) call such a meeting if it is successful in its solicitation. The purpose of the meeting would be to request that shareholders vote in favor of an amendment to the TCI Articles of Incorporation, which would eliminate the Excess Share Provision as to Simon and permit it to purchase the shares necessary for it to succeed in its takeover bid. If two-thirds of the shareholders vote in favor of the amendment, Simon could immediately begin purchasing tendered shares.

Once the requisite number of shares is acquired, Simon could then proceed to the final steps necessary to effectuate a merger. Simon regards only these final steps as irreversible, and will agree not to take them until the Sixth Circuit has ruled.[1] Simon further stated a willingness to: 1) extend the tender offer date[2]; 2) not take any action to formally implement the bylaw amendment if shareholders approve it; and, 3) assuming that it is successful, not remove directors or exercise any management control in TCI.

---

1. During a conference call with counsel and the Court, Simon's counsel suggested that an appellate ruling could reverse Simon's purchase of tendered shares. However, counsel did not direct the Court to any authority for this proposition and it is not clear how an appellate ruling could effectively undue a sale of shares to Simon by numerous shareholders, when those shareholders are not parties to this litigation and the value of the shares is subject to market forces.

2. Per Simon's counsel, the current expiration date is May 30, 2003.

Defendants oppose the partial stay that Simon proposes. They contend that only a stay of the injunction in its entirety will maintain the status quo as to both parties. If the Court is affirmed by the Sixth Circuit, Simon's proposal, says Defendants, would poise Simon to complete a takeover shortly after the ruling. Thus, even before a ruling, Defendants say they would be forced to take measures to ensure that shareholders receive the maximum value. Specifically, Defendants contend they may be forced to solicit competitive bids and/or place TCI up for auction, so that shareholders have the benefit of other options if Simon calls a special meeting.

If the Court grants the stay in its entirety, Defendants have offered to refrain from taking any steps to impede Simon's tender offer pending the Sixth Circuit ruling. Defendants indicate that they would specifically refrain from: 1) repurchasing shares; 2) adopting a shareholders' rights plan, i.e. "poison pill"; 3) amending the bylaws; 4) calling a shareholder's meeting; and, 5) asking for consents and/or designations by shareholders.

Defendants assert several reasons why they disagree with this Court's Order Granting Plaintiff's Motion for Preliminary Injunction. They argue that there are serious questions going to the merits of the injunction. Defendants further assert that they will be irreparably harmed if a stay is denied because they may suffer: 1) a sale or acquisition of TCI for an inadequate price; 2) loss of the opportunity to vote on the future of TCI by its largest shareholder; and, 3) actual and consequential monetary damages in the multimillions.

Simon disputes these challenges. It also contends that Defendants' claimed monetary damages are speculative. Simon further argues that Defendants will not be irreparably harmed if Simon is allowed to take all steps short of completing a merger, because Defendants are at liberty to take any steps that they deem necessary to solicit other bids. If Defendants prevail, says Simon, the Sixth Circuit can simply nullify actions taken by Simon to effect the merger. Conversely, Simon argues that, if the stay is granted, it will be irreparably harm because it will "lose the benefit of its victory" and shareholders will be deprived of their right to decide whether to accept Simon's takeover bid for several more months.

## II. STANDARD OF REVIEW

A motion to stay an injunction pending appeal is governed by FRCP 62(c) which states in relevant part:

> When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

A court must consider the following factors when deciding whether to issue a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the applicant will be irreparably injured absent a stay;
>
> (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition,* 945 F.2d at 153.

Although the movant is required to establish the same factors that are required

for a grant of a preliminary injunction, "a movant need not always establish a high probability of success on the merits." *Id.* Rather, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.* In other words, a greater showing on some elements allows for less of a showing on others. Nevertheless, at a minimum, to satisfy the first element, a movant must at least show "serious questions going to the merits." *Id* at 154 (quoting *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)).

■ When evaluating the harm that may be suffered by either party, a court must consider: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and, (3) the adequacy of the proof provided. *Id.* Potential harm that is compensable or otherwise may be corrected by later rulings of the court are not irreparable:

> In evaluating the degree of injury, it is important to remember that [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id* (citations omitted). Furthermore, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.*

## III. ANALYSIS

### A. Likelihood of Success on the Merits

■ The Court is not persuaded by Defendants' substantive claims of error in the Court's issuance of a preliminary injunction. However, when considering this factor in the context of a request for a stay, a court is not required to find a substantial likelihood that the movant will be successful on appeal. Rather, a movant can satisfy this element where substantial legal questions or matters of first impression are at issue and the equities favor maintaining the status quo. See *Michigan Coalition,* 945 F.2d at 154; *Sweeney v. Bond,* 519 F.Supp. 124, 132 (E.D.Mo.1981); *Robinson Rubber Products Co., Inc. v. Hennepin County,* 927 F.Supp. 343, 346 (D.Minn.1996). The Court finds that Defendants have raised serious legal questions regarding interpretation of the Michigan Control Share Acquisitions Act, M.C.L. § 450.1790, *et seq,* which have yet to be clearly addressed in this Circuit. Therefore, the Court finds that this element weighs in favor of granting a stay.

### B. Balance of Harms

The Sixth Circuit's resolution of the legal issues raised by Defendants will significantly impact the future course of Simon's takeover bid. Defendants have adequately demonstrated that they will suffer irreparable harm which outweighs any potential harm to Simon if a stay is not granted,

A stay prohibiting Simon from proceeding and Defendants from impeding the takeover bid appears to be the best means to preserve all rights pending appellate review. Without a stay and presuming that Simon is successful in calling and in the outcome of a special meeting to amend the TCI Articles of Incorporation, the parties agree that Simon would be free to move forward with its takeover bid. It could then effectuate a merger within a short period of time after the Articles are amended in its favor. This would result in a change of ownership through the purchase of shares from numerous sharehold-

ers who are not parties to this action. While certain of the steps along the way, such as the vote to amend the Articles, could be nullified by the Sixth Circuit, it is not clear that certain other steps would be reversible or compensable if Defendants prevail on appeal. Specifically, it is not clear that the Sixth Circuit could require tendering shareholders to buy back tendered shares. Certainly the status quo would be irreversibly altered if the tender could not be undone.

Defendants do not wish to sell TCI. However, to avoid an uncontested takeover by Simon, they say they would be forced to engage in allowable tactics to counter Simon's bid while their appeal is pending. Most obviously, Defendants could be forced to put TCI up for sale by soliciting other bidders or holding an auction. Simon says that it is entitled to force Defendants' hand at this time and in this manner; otherwise, it will lose the benefit of its victory.

Simon's argument ignores the fact that the Court's ruling is preliminary, not final, and is intended only to preserve Simon's rights until a final decision on the merits. A complete stay would do just that; it would preserve Simon's right to have its tender offer considered by shareholders. Then, if Simon prevails on appeal, it will have the same right to call a meeting and purchase shares that it currently has and Defendants will have the same opportunity that it currently has to engage in counter measures. On the other hand, if Defendants prevail on their appeal, the Taubman family would be allowed to vote on the future of TCI. For these reasons, the Court finds that the balance of harms weighs in favor of Defendants.

### C. Public Interest

The Court finds that it is in the public interest to preclude efforts to either advance or impede Simon's takeover bid until legal issues that impact upon the manner in which the bid can proceed, and whether the Taubman family will be allowed to vote all or any portion of their shares, are resolved by the Sixth Circuit.

## IV. SECURITY BOND

Under the express language of FRCP 62(c), the Court may set bond in any amount it deems appropriate "for the security of the rights of the adverse party." Simon has not presented any evidence of or otherwise identified specific monetary damages that it may suffer as a result of the stay. Rather, it only suggests in a footnote that the Court impose a bond of $325 million, which purportedly represents the difference between the Simon/Westfield tender offer price for TCI's outstanding shares and the market price of those share prior to the tender offer. Simon, however, does not cite any authority that demonstrates that it would be entitled to this measure of damages. Simon's assertion that it may incur damages in the proposed bond amount is, therefore, purely speculative. As such, security is not necessary to protect Simon's interests. Defendants are not required to post a bond pending appeal.

## V. CONCLUSION

After balancing the factors to be considered under FRCP 62(c), the Court is persuaded that a stay of its injunction, in its entirety, is warranted. Defendants' Motion to Suspend Injunction Pending Appeal is **GRANTED**.

The Court further Orders that:

A. Defendants shall move for expedited review of its appeal in the Sixth Circuit;

B. While Defendants' appeal is pending, they shall refrain from engaging in any activity to impede Simon's tender offer, including, but not limited to:

   i. repurchasing shares;

ii. adopting a shareholders' rights plan, i.e. "poison pill";

iii. amending the bylaws;

iv. calling a shareholder's meeting; and

v. asking for consents and/or designations by shareholders.

C. Nothing in this Order prohibits Simon from extending its tender offer beyond May 30, 2003.

**IT IS SO ORDERED.**

## ORDER

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Emergency Motion to Modify the Court's May 20, 2003 Order. On May 20, 2003, the Court granted Defendants' Motion to Suspend Injunction Pending Appeal. Plaintiffs' motion is prompted by Defendants' lobbying of the Michigan Legislature for amendments to the Michigan Control Share Acquisitions Act. The proposed amendments could render this Court's prior rulings and the pending appeal moot. Oral argument was heard on Friday, June 6, 2003.

The Court DENIES Plaintiffs' motion.

## II. ARGUMENTS

House Bill 4764 ("HB 4764") was introduced on May 27, 2003 in the Michigan State Legislature (the "Legislature") and referred to the Legislature's Committee on Commerce. Among other things, it proposed that the Michigan Control Share Acquisitions Act ("Michigan Control Share Act"), M.C.L. § 450.1790, *et seq.*, be amended to provide that:

1. Earlier versions of the bill were defeated in the Senate in March 2003.

2. The "excess share provision" prohibits anyone from acquiring shares in excess of 8.23% of the value of the outstanding capital stock of TCI (except certain persons who may own up

! "...formation of a group, before or after the date of the amendatory act ..., does not constitute a control share acquisition of shares ... held by members of the group..."

! either shareholders or directors can grant voting rights to control shares acquired in a control share acquisition.

! only the directors can propose amendments to the articles of incorporation.

Pl. Exh A, HB 4764 at Secs. 791(6), 798(1), 611(3).

Defendants admit they have actively lobbied for the proposed amendments. They submitted memoranda for the Legislature's consideration in support of their position. While Plaintiffs have lobbied against such amendments to the Michigan Control Share Act, they contend they had no knowledge of Defendants most recent efforts, which presumably had some sway in the drafting and consideration of HB 4764.[1]

Plaintiffs assert that Defendants' lobbying violates the Court's May 20th Order. Defendants were ordered to "refrain from engaging in any activity to impede Simon's tender offer." Order at p. 8. Plaintiffs argue that modification of the Court's Order is now required, because Defendants' appeal to the Legislature is designed to thwart Simon's tender offer. Plaintiffs propose that the Court modify its May 20th Order to allow Simon to solicit votes to call a special shareholder's meeting, and to allow a vote to be held at that meeting on whether to amend the "excess share provision" in the Taubman Centers, Inc. (TCI) Articles of Incorporation.[2] The re-

to 9.9%). Under the Articles, any transfer of stock that would result in a person owning shares in violation of the excess share provision is void *ab initio* and the intended transferee will not acquire any rights in the shares. This provision can only be amended by a two-thirds vote of TCI's shareholders.

maining restrictions imposed in the Order, as to both Plaintiffs and Defendants, would stand.[3]

Without such a modification, Plaintiffs assert that they and TCI shareholders would be substantially injured because their voting rights may be nullified by the proposed legislation before the Sixth Circuit rules on the pending appeal. Plaintiffs opine that, if shareholders vote before enactment of the proposed amendments, Plaintiffs will have a colorable argument that it has "vested rights" against which the proposed amendments cannot be retroactively applied.

Defendants would not be irreparably injured by this "limited" modification of the Court's Order, argue Plaintiffs, because the vote can be reversed if the Sixth Circuit rules in Defendants' favor. And, the Court's grant of a preliminary injunction will be preserved for appellate review.

Defendants deny that their lobbying efforts are within the scope of activities prohibited by the letter or spirit of the Court's May 20th Order. In any event, Defendants argue that such a prohibition would constitute a prior restraint in violation of Defendants' First Amendment rights. Defendants argue that their advocacy in favor of legislation is protected speech, even if it directly impacts on prior and future rulings of the Court.

Defendants further argue that Plaintiffs' proposed modification of the stay Order would cause Defendants irreparable harm, because Plaintiffs would be poised to take down shares within a few hours of a Sixth Circuit ruling, while Defendants would be restrained under the stay Order from taking corporate measures to oppose the tender offer.

Since Plaintiffs filed their motion, HB 4764 was further modified by the Commerce Committee and the Michigan House of Representatives. On June 4, 2003, the bill was voted out of the Committee with a modification that 1) allowed shareholders (as well as directors) to propose an amendment to the articles of incorporation, and 2) omitted language giving retroactive effect to a provision that would establish that formation of a group is not a control share acquisition. House Substitute for HB 4764 at Secs. 611(3), 791(6). On June 5, 2003, however, the bill was further modified in the House and passed with retroactive language reinserted. House Substitute for HB 4764 at Secs. 791(6), 798a.

## III. APPLICABLE LAW AND ANALYSIS

### A. Defendants' Lobbying Efforts Do Not Violate The Court's Order

An order prohibiting a certain form of speech can constitute a "prior restraint" in violation of the First Amendment:

> The term prior restraint is used "to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities— are classic examples of prior restraints.

*Alexander v. U.S.*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (citations omitted).

---

**3.** Because the Court's Order prohibited Plaintiff from soliciting votes to call a special meeting in order to request that shareholders vote on whether to amend the Articles, Plaintiffs were also prohibited from attempting to purchase the shares necessary for it to succeed in its takeover bid. Defendants were expressly prohibited from: repurchasing shares, adopting a Shareholders' right plan (i.e., poison pill), amending the bylaws, calling a shareholder's meeting, and asking for consents and/or designations by shareholders.

In antitrust cases, the United States Supreme Court has upheld the right of a business to advocate for or against legislation even if it will have the effect of hindering competition. In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the United States Supreme Court expressly rejected a claim that defendants' publicity campaign, aimed at influencing legislation that would be contrary to its competitors' interest, violated antitrust laws. Noting the implications of such a finding on the legislative process and constitutional rights the Court stated:

> In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act. Secondly, and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.

*Noerr*, 365 U.S. 127, 81 S.Ct. at 529–530 (footnote omitted).

Likewise, in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), where defendants were accused of instituting state and federal proceedings for the purpose of eliminating their competition, the Court stated:

> We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors.

See also *Massachusetts Nurses Assoc. v. Dukakis*, 570 F.Supp. 628, 636 (D.Mass. 1983)("[T]he First Amendment to the United States Constitution protects individuals' rights to petition their federal and state legislatures to seek to convince the legislatures to pass laws which will be in their interest.").

■ The principle discussed in *Noerr Motor Freight* and *California Motor Transport* applies here. This Court's May 20th Order did not expressly or impliedly prohibit Defendants from lobbying the Legislature, nor could it have. Defendants have a First Amendment right to attempt to change the law, even if such efforts directly impact matters pending before the Court. Indeed, Plaintiffs do not dispute that prohibiting Defendants from such activity would be an unconstitutional prior restraint. Consequently, the Court finds that Defendants' lobbying activity did not and does not violate the stay Order.

## B. Modification Of The Stay Order Is Not Warranted

Despite their request that the Court deem Defendants' actions to be a direct violation of the May 20th Order, Plaintiffs do not request that the Court modify its Order to preclude Defendants from proceeding with their lobbying efforts. Rather, Plaintiffs request that the Court allow them to proceed with a shareholder vote on the excess share provision "to permit the [TCI] shareholders to have the tender

offer considered based on the law in effect when they invested in [TCI], when they tendered their shares, and when the Court issued its preliminary injunction ruling." Pl. Reply br. at 2.

But for the stay Order, Plaintiffs argue they would be at liberty to engage in counter-measures in advance of a final vote on the proposed amendments by the Legislature; namely, Plaintiffs could proceed with a vote to amend the Articles, which they argue would give them "vested rights" in their tender offer under the law in effect at the time the vote is taken. This, Plaintiffs argue, would preserve "the rights [the Court] intended to confer on shareholders." Oral Argument Tr. at p. 35.

Despite their acknowledgment that it is fully within the legislative branch's authority to enact or amend laws to clarify or even reverse interpretations of its statutes by the judicial branch, Plaintiffs, nevertheless, argue that the Court must "rebalance the equities" because of the pending legislation. Plaintiffs further maintain that the requested relief does not implicate Defendants' First Amendment right to lobby the Legislature, because they are not asking that the Court prohibit Defendants' lobbying efforts.

Plaintiffs' rationale is flawed. First, contrary to Plaintiffs' assertions, modification of the stay Order as Plaintiff's propose *would* encroach upon Defendants' First Amendment rights. Plaintiffs' request is solely because of Defendants' attempt to influence legislation which may be detrimental to Plaintiffs' interests. Although this is not a request that the Court directly prohibit Defendants' lobbying efforts, Plaintiffs do request that the Court hold the Defendants' legislative advocacy against them and reassess the relative harms that the parties may suffer as a result of continued enforcement of the May 20th stay. A reassessment and modification on this basis, however, could hardly be considered anything but a punitive response to Defendants' exercise of their First Amendment rights.

Second, contrary to their assertions, Plaintiffs request that the Court do far more than maintain the status quo. Plaintiffs actually request that this Court insulate them from possible changes in the law that could sound the death knell to their lawsuit. Plaintiffs, however, were unable to direct the Court to any authority that holds either that they are entitled to be protected from acts of the Legislature or that the Court should or could take steps to insulate its rulings from acts of the Legislature in the manner proposed.

Furthermore, Plaintiffs misstate this Court's purpose in granting their motion for preliminary injunction. The Court did not grant Plaintiffs' motion to insure that their rights "vest" under a particular interpretation of the Michigan Control Share Act or to grant Plaintiffs final relief. The Court granted the motion simply to preserve Plaintiffs' rights, as the Court has determined them to be, pending a final determination on the merits. Because the relevant area of law is unsettled, the Court stayed the injunction, in part, so that the extent of those rights could be clarified. The Legislature has taken up that task. It is not the function of this Court to protect Plaintiffs from changes that the Legislature may make that may be contrary to Plaintiffs' interests.

Finally, Plaintiffs' request that the Court "rebalance the equities" essentially amounts to a request for reconsideration of the May 20th Order. Eastern District of Michigan Local Rule 7.1(g)(3) provides for reconsideration only if the movant demonstrates a palpable defect by which the court and the parties have been misled, and further demonstrates that correcting the defect will result in a different disposition of the case.

Plaintiffs have not identified a palpable defect that impacts the Court's prior ruling. It is true that the Court did not consider the pending legislation or Defendants' efforts in favor of it. However, it would have been inappropriate for the Court to weigh either fact against Defendants. Thus, the fact that Defendants did not apprise the Court of developments on the legislative front, or their advocacy in favor of legislative amendments, was not a palpable defect which warrants reconsideration of the prior ruling.

## IV. CONCLUSION

Plaintiffs' Emergency Motion to Modify the Court's May 20, 2003 Order is **DENIED**.

**IT IS SO ORDERED.**