ROGERS, J., delivered the opinion of the court. RYAN, J. (p. 551-52), delivered a separate concurring opinion. COLE, J. (pp. 552-55), delivered a separate dissenting opinion.
OPINION
ROGERS, Circuit Judge.
The appeals in these cases have been consolidated. Both appeals involve Ohio Revised Code § 3505.20, which provides that “Any person offering to vote may be challenged at the polling place by any challenger, any elector then lawfully in the polling place, or by any judge or clerk of elections.” Ohio Rev.Code Ann. § 3505.20 (Anderson 2004). The challengers referred to in § 3505.20 are provided for in § 3505.21, which provides:
At any primary, special, or general election, any political party supporting candidates to be voted upon at such election and any group of five or more candidates may appoint to any of the polling places in the county or city one person, a qualified elector, who shall serve as challenger for such party or such candidates during the casting of the ballots, and one person, a qualified elector, who shall serve as witness during the counting of the ballots; provided that one such person may be appointed to serve as both challenger and witness.
Ohio Rev.Code Ann. § 3505.21 (Anderson 2004).
The first appeal, Summit County Democratic Central and Executive Committee v. Blackwell, # 04-4311, is an appeal from an order entered on October 31, 2004, by the Honorable John R. Adams of the United States District Court for the Northern District of Ohio, which granted a motion for a temporary restraining order, ordering that “persons appointed as challengers may not be present at the polling place for the sole purpose of challenging the qualifications of other voters” on November 2, 2004, the date of the Ohio general election. In that case, plaintiffs, the Summit County Democratic Central and Executive Committee and others, had filed a complaint on October 28, 2004, against J. Kenneth Blackwell, the Secretary of State of Ohio, members of the Summit County Board of Elections, unknown “challengers,” and other unknown government officials pursuant to 42 U.S.C. § 1983. The complaint sought an order “prohibiting Defendants, while acting under color of state law, from depriving citizens of Ohio of their constitutional rights to due process and equal protection, through the application or enforcement of the so-called “challenge” procedures set forth in Ohio Rev.Code § 3505.20 ... in the Ohio general election for local, state, and national offices on November 2, 2004, and thereafter.” On October 31, 2004, the district court granted a motion to intervene filed by Matthew Heider, Sam Ewing, Elizabeth Coombe, and David Timms, challengers from the Ohio counties of Allen, Franklin, Summit, and Warren. The district court also granted a motion to intervene filed by the State of Ohio. On November 1, 2004, Defendants-Interve-nors-Appellants Matthew Heider, Sam Ewing, Elizabeth Coombe, and David *550 Timms filed a motion in this Court for an emergency stay of the district court’s order, and also filed a notice of appeal.
The second appeal, Spencer v. Blackwell, No. 04-4312, is an appeal from an order entered on November 1, 2004, by the Honorable Susan J. Dlott of the United States District Court for the Southern District of Ohio, which granted a motion for injunc-tive relief, enjoining “all Defendants from allowing any challengers other than election judges and other electors into the polling places throughout -the state of Ohio on Election Day.” In that case, plaintiffs Marian and Donald Spencer had filed a complaint on October 27, 2004, against J. Kenneth Blackwell, the Secretary of State of Ohio, the Hamilton County Board of Elections, and the chair and members of that Board pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1973(a). The Amended Complaint in that action, filed on October 29, 2004, alleged that “African American voters ... will face an imposing array of ‘challengers’ deployed to their precincts on Election Day. African American voters will be intimidated; racial tension will rise and African American voters will be blocked from exercising their right to vote.” The district court found that
“[t]he evidence before the Court shows that in Tuesday’s election, the polling places will be crowded with a bewildering array of participants — people attempting to vote, challengers (Republican, Democrat, and issue proponents or opponents), and precinct judges. In the absence of any statutory guidance whatsoever governing the procedures and limitations for challenging voters by challengers, and the questionable enforceability of the State’s and County’s policies regarding good faith challenges and ejection of disruptive challengers from the polls, there exists an enormous risk of chaos, delay, intimidation, and pandemonium inside the polls and in the lines out the door.”
On November 1, 2004, Defendants-Inter-venors-Appellants Clara Pugh, Sam Malone, and Charles Winburn filed a motion for an emergency stay of the district court’s order, and filed a notice of appeal.
There is a significant question as to plaintiffs’ standing. As the Supreme Court has held on many occasions, “the irreducible constitutional minimum of standing contains three elements,” injury in fact, causation, and the likelihood that the injury will be redressed. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 act 2130, 119 L.Ed.2d 351 (1992). Standing in this case is a difficult issue, considering the nature of the alleged injuries. However, I assume without deciding that the plaintiffs have standing, given the short time in which we have to consider this issue, and the nonspeculative possibility that at least some actual injury will occur, in the form of greater delay and inconvenience in voting. To the extent that the lower court relied on additional “injury,” such injury is speculative.
The next question is whether this court should grant Defendants-Intervenors-Appellants’ motion for an emergency stay. The factors to be considered in determining whether an order should be stayed are the same factors considered in determining whether to issue a temporary restraining order of a preliminary injunction. See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir.1991). These factors are “(1) whether the movant has a ‘strong’ likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a.preliminary injunc *551 tion.” Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir.2000).
Although it is possible that the plaintiffs will succeed on the merits, it is not likely. Neither district court relied upon racial discrimination as a basis for finding a likelihood of success on the merits. Instead, the courts below found a likelihood that the right to vote would be unconstitutionally burdened by having challengers present at the polling place, and that the presence of such challengers was not a sufficiently narrowly tailored way to accomplish legitimate government interests. Of course if we assume that the presence of challengers burdens the right to vote, it may certainly be argued that a more narrowly tailored approach is available. But the plaintiffs do not appear likely to succeed on the necessary primary finding that the presence of challengers burdens the right to vote. Challengers may only initiate an inquiry process by precinct judges, judges who are of the majority party of the precinct. The lower court orders do not rely on the likelihood of success of plaintiffs’ challenges to the procedure that will be used by precinct judges once a challenge has been made. Longer lines may of course result from delays and confusion when one side in a political controversy employs a statutorily prescribed polling place procedure more vigorously than in previous elections. But such a possibility does not amount to the severe burden upon the right to vote that requires that the statutory authority for the procedure be declared unconstitutional.
The balance of harms in this case is close. If plaintiffs are correct in their view of the law, assuming they have standing because of the likelihood of significant delay, they will suffer irreparable harm. On the other hand, if the plaintiffs are not correct in their view of the law, the State will be irreparably injured in its ability to execute valid laws, which are presumed constitutional, for keeping ineligible voters from voting. In particular, the State’s interest in not having its voting processes interfered with, assuming that such processes are legal and constitutional, is great. It is particularly harmful to such interests to have the rules changed at the last minute.
On balance, the public interest weighs against the granting of the preliminary injunction. There is a strong public interest in allowing every registered voter to vote freely. There is also a strong public interest in permitting legitimate statutory processes to operate to preclude voting by those who are not entitled to vote. Finally, there is a strong public interest in smooth and effective administration of the voting laws that militates against changing the rules in the hours immediately preceding the election.
The above reasons support the GRANT of Defendants-Intervenors-Appellants’ motions for emergency stays pending appeal.