*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0375p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

SERVICE EMPLOYEES INTERNATIONAL UNION
LOCAL 1, et al.,

        *Plaintiffs-Appellees*,

    *v.*

JON HUSTED,

        *Defendant-Appellant,*

STATE OF OHIO,

        *Intervenor Defendant-Appellant*,

TIMOTHY M. BURKE, et al.,

        *Defendants.*

No. 12-4264

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 12:-cv-00562—Algenon L. Marbley, District Judge.

Filed: October 31, 2012

Before: GIBBONS and COOK, Circuit Judges; ROSENTHAL, District Judge[*]

————————————

## OPINION

————————————

PER CURIAM.  The State of Ohio and Jon Husted, Ohio's Secretary of State
("Secretary"), move for a stay pending appeal of the district court's October 26, 2012
order granting the plaintiffs' renewed motion for a preliminary injunction. The order
requires Ohio and the Secretary to count provisional ballots cast in the wrong polling

---

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas,
sitting by designation.

place due to poll-worker error—so-called wrong-place/wrong-precinct ballots—in the November 6, 2012 election.  We **GRANT** the motion.

We recently affirmed a preliminary injunction entered by the district court on August 27, 2012, directing Ohio and the Secretary to count right-place/wrong-precinct provisional ballots caused by poll-worker error in the upcoming election. *See Ne. Ohio Coal. for the Homeless v. Husted*, --- F.3d ----, 2012 WL 4829033 (6th Cir. Oct. 11, 2012) [hereinafter *NEOCH*].  In that opinion, we noted that the August 27 order did not require the counting of wrong-place/wrong-precinct ballots.  *Id.* at *6–8.  But we expressed no view on whether the refusal to count such ballots imposed an unconstitutional burden on voters, leaving the question open for possible future litigation.  *Id.* at *7 n.6.  On October 17, the plaintiffs filed a renewed motion for a preliminary injunction in the district court that would mandate the counting of wrong-place/wrong-precinct ballots, reiterating a request made in their original June 22, 2012 motion for a preliminary injunction but not included in the August 27 order.  The district court granted the renewed motion after a hearing.  Ohio and the Secretary unsuccessfully moved for a stay of the preliminary injunction during the hearing, prompting this emergency appeal.

We review four factors when evaluating a stay pending appeal under Federal Rule of Appellate Procedure 8(a):

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Mich. Coal. of Radioactive Material Users, Inc. v. Gripentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."  *Id.*  As the moving party, Ohio has the burden of showing it is entitled to a stay.  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

We begin by considering "the likelihood that the district court's preliminary injunction order will be upheld on appeal." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). This involves examination of the four factors the district court considered when assessing the plaintiffs' motion for a preliminary injunction—likelihood of success on the merits, irreparable harm to the moving party, harm to other parties, and the public interest. *Overstreet*, 305 F.3d at 573. While a "grant or denial of a preliminary injunction is reviewed for an abuse of discretion," we are mindful that a preliminary injunction is an "extraordinary" form of relief and that the moving party in the district court has the "burden of proving that the circumstances clearly demand it." *Id.*

Ohio and the Secretary are quite likely to demonstrate on appeal that plaintiffs failed to show a strong likelihood of success on the merits of their constitutional claims with respect to wrong-place/wrong-precinct ballots. The salient feature of the right-place/wrong-precinct problem addressed in *NEOCH* is the disenfranchisement of voters who arrive at the correct polling place (and are otherwise eligible to vote) solely as a consequence of poll-worker error, a situation caused by Ohio's system of multi-precinct polling places. *NEOCH*, 2012 WL 4829033, at *10–13. Yet, the district court's expanded preliminary injunction glosses over this distinguishing feature—that the voter arrived at the correct polling place—by finding that Ohio law imposes an "identical" burden on voters who cast wrong-place/wrong-precinct ballots. (R. 90, Op. & Order at 9, PageID #6232.) In other words, because poll workers make the same errors, the voter burden must be the same. This conclusion absolves voters of all responsibility for voting in the correct precinct or correct polling place by assessing voter burden solely on the basis of the outcome—i.e., the state's ballot validity determination. While poll-worker error may contribute to the occurrence of wrong-place/wrong-precinct ballots, the burden on these *voters* certainly differs from the burden on right-place/wrong-precinct voters—and likely decreases—because the wrong-place/wrong-precinct voter took affirmative steps to arrive at the wrong polling location. The district court abused its discretion by failing to distinguish these burdens.

Though voters must rely heavily on poll workers to direct them to the proper precinct in a multi-precinct voting place, they are not as dependent on poll workers to identify their correct polling place. Ohio law requires election officials to provide notice to voters of where they are eligible to vote after they register or if their precinct changes. *See* Ohio Rev. Code §§ 3503.16(E) (change in address of voter); *id.* § 3503.17 (change in precinct boundaries); *id.* § 3503.19(C)(1) (new voters). Furthermore, information about where to vote is easily accessible by calling county boards of elections or accessing the Secretary's webpage. *See, e.g.*, "Find Your Polling Location," Ohio Sec'y of State, http://www.sos.state.oh.us/SOS/pollinglocation.aspx?page=361. In our view, a voter who fails to utilize these tools and arrives at the wrong polling location cannot be said to be blameless in the same way as a right-place/wrong-precinct voter. And the district court's findings of thousands of rejected wrong-precinct ballots overstates the sparse evidence of poll workers sending voters to the wrong polling location. (R. 90, Op. & Order at 10 n.3, PageID #6233; *see also* SEIU Appellees' Resp. Br. at 14.)

Even assuming that Ohio law imposes an "identical" burden on wrong-place/wrong-precinct voters, the state's interest in enforcing a particular rule varies according to the impact of non-enforcement on its legitimate interests. We suggested in the *NEOCH* opinion that shifting all responsibility for determining the proper polling place to poll workers would have far-reaching implications for Ohio's precinct-based voting system that go well beyond the issues created by multi-precinct polling places. *NEOCH*, 2012 WL 4829033, at *7 (describing the "wrong place, wrong precinct" remedy as a "vote anywhere" remedy).

Moreover, the district court's injunction, in disregarding the importance of voting place, has a significant effect on the State's legitimate interest in maintaining its precinct-based voting system. Unlike the prior injunction, the expanded injunction opens the door for steering last-second voters to convenient (though incorrect) polling places, in the hopes that some of the votes will count. This perverse incentive did not exist with right-place/wrong-precinct voters; voters who make the effort to arrive at the correct polling place would have no reason to miscast their vote at the wrong table or in

the wrong line. And even if shorter precinct lines presented such an incentive for a handful of those voters, the district court's August 27 preliminary injunction requires poll-workers to inform voters that a miscast vote would not count. *See* Ohio Sec'y of State, Form 12-D, *available at* http://www.sos.state.oh.us/sos/upload/elections/forms/12-D.pdf. These considerations lead us to conclude that Ohio and the Secretary will more than likely demonstrate on appeal that the plaintiffs failed to "show more than a mere possibility of success" on the merits of their constitutional claim. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).

Turning to the plaintiffs' assertions of irreparable harm, the obstacles the plaintiffs will face in defending the wrong-place/wrong-precinct injunction on appeal become manifest. The plaintiffs concede that they asked for wrong-place/wrong-precinct relief in their original motion for a preliminary injunction. (R. 84, Renewed Mot. for Prelim. Inj. 2, at #6095). But the district court's August 27 order, though ambiguous at points, did not grant that relief, and neither did the Secretary's directive implementing the district court's ruling. *See* Ohio Sec'y of State, Directive 2012-44, at 1 (Sept. 11, 2012), *available at* http://www.sos.state.oh.us/SOS/Upload/elections/directives/2012/Dir2012-44.pdf. Furthermore, plaintiffs' original appellate briefing tacitly acknowledged the district court's failure to grant broader relief for wrong-place/wrong-precinct ballots by arguing that the record—not the district court's opinion—justified such relief. (SEIU Appellees' Br. at 81–85.) Accordingly, it is fair to say that, following our decision in *NEOCH*, the plaintiffs *renewed* their request for broader injunctive relief by repeating arguments with no new facts or law to support them.

As a general rule, last-minute injunctions changing election procedures are strongly disfavored. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion . . . . As an election draws closer, that risk will increase."); *Ne. Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006) ("[T]here is a strong public interest in smooth and effective

administration of the voting laws that militates against changing the rules in the middle of submission of absentee ballots."); *Summit Cnty.*, 388 F.3d at 551 ("It is particularly harmful to such interests to have the rules changed at the last minute."). The application of that principle is particularly appropriate when a party does not seek to clarify or expand the scope of relief after having an opportunity to do so, in the district court and on appeal, in the months before an election, and then asks for reconsideration of that relief days before an election. The plaintiffs' failure to act earlier in pursuing these claims significantly undermines their assertions of irreparable harm in the absence of the injunction.

Meanwhile, the harm to Ohio, the Secretary, and the general public caused by issuance of this injunction easily outweighs any potential harm to the plaintiffs if their view of the law is eventually determined to be correct. The injunction, it should be noted, *both* requires the expedited issuance of new instructions to poll workers less than two weeks before the election *and* refuses enforcement of a presumptively constitutional policy regarding voter eligibility. *Blackwell*, 467 F.3d at 1012 ("There is . . . a strong public interest in permitting legitimate statutory processes to operate to preclude voting by those who are not entitled to vote."). Moreover, the inevitable result of the injunction's dramatic changes to Ohio's precinct voting system will be interference with orderly election administration and greater confusion among poll workers and voters. *Id.* Early voting is already underway in Ohio. S*ee* "Voting Early in Person," Ohio Sec'y of State, http://www.sos.state.oh.us/SOS/elections/Voters/absentee/inperson.aspx. Changing election rules in this manner while voting is occurring disrupts the electoral process and threatens its fairness. These harms to the public and its elected government are significant ones. We therefore find that Ohio and the Secretary have demonstrated a high likelihood of success on their appeal of the October 27 preliminary injunction.

We conclude by briefly addressing the three final factors of the test for granting a stay—irreparable harm to Ohio and the Secretary absent a stay, irreparable harm to others if the stay is granted, and the public interest in granting the stay. For the reasons stated previously in reviewing Ohio's likelihood of success on an appeal of the

preliminary injunction, we agree with Ohio and the Secretary that all three of these factors weigh in their favor.  Accordingly, the issuance of a stay is appropriate.

For these reasons, we **GRANT** Ohio and the Secretary's emergency motion to stay the district court's October 26, 2012 order.