RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

A. PHILIP RANDOLPH INSTITUTE; NORTHEAST OHIO
COALITION FOR THE HOMELESS; LARRY HARMON,
　　　　　　　*Plaintiffs-Appellants*,

　　*v.*

JON HUSTED, Secretary of State of Ohio,
　　　　　　　*Defendant-Appellee*.

┐
│
│
│
> No. 18-3984
│
│
│
┘

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00303—George C. Smith, District Judge.

Decided and Filed: October 31, 2018

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ON MOTION AND REPLY:** Stuart C. Naifeh, Naila Awan, Brenda Wright, DĒMOS, New York, New York, Chiraag Bains, DĒMOS, Washington, D.C., Freda J. Levenson, Elizabeth Bonham, AMERICAN CIVIL LIBERTIES UNION OF OHIO, Cleveland, Ohio, for Appellants. **ON RESPONSE:** Steven T. Voigt, Heather L. Buchanan, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Joseph A. Vanderhulst, PUBLIC INTEREST LEGAL FOUNDATION, Indianapolis, Indiana, Paul J. Orfanedes, JUDICIAL WATCH, INC., Washington, D.C., for Amici Curiae.

The court delivered a published order. SILER, J. (pp. 14–15), delivered a separate opinion concurring in part and dissenting in part.

_____

**ORDER**

_____

Plaintiffs filed an Emergency Motion for Injunction Pending Appeal with this Court to enjoin Defendant to instruct Ohio's county boards of elections ("Boards"), first, to count certain provisional ballots that may be cast in the November 6, 2018 federal election in accordance with the "*APRI* Exception" (discussed below) and, second, not to remove any voter under Ohio's Supplemental Process pending appeal if removal is pursuant to a confirmation notice that was sent prior to August 2016. Defendant opposes the motion.

**BACKGROUND**

**Procedural History**

To begin, we note the current posture and long history of the case: The case originally involved two issues, the one Plaintiffs raise now before this Court concerning the validity of Ohio's confirmation notices under the National Voter Registration Act ("NVRA"), and another issue of whether Ohio's Supplemental Process as a whole violated the NVRA's provision stating that no registrant may be removed from the voter rolls "by reason of the person's failure to vote." 52 U.S.C § 20507(b)(2). On the second issue, this Court decided that the Supplemental Process did violate § 20507(b)(2) in *A. Philip Randolph v. Husted*, 838 F.3d 699 (6th Cir. 2016) before being reversed by the Supreme Court in *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833 (2018), which held that the program complied with § 20507(b)(2). Neither of those cases binds this Court on the issue of whether Defendant's confirmation notice violated the separate requirements of § 20507(d) because this Court did not decide the merits of that issue and Defendant did not petition the Supreme Court for *certiorari* on that issue.[1]

_____

[1]The district court thought otherwise, noting that the Supreme Court stated in its decision that "Ohio's Supplemental Process follows subsection (d) to the letter. It is undisputed that Ohio does not remove a registrant on change-of-residence ground[s] unless the registrant is sent and fails to mail back a return card and then fails to vote for an additional four years." (R. 144, Order, Page ID# 24772 (citing *Husted v. A. Philip Randolph Institute*, 138 S. Ct at 1842).) Plaintiffs also thought otherwise, noting that this Court stated in its decision that the notices were "blatantly non-compliant with the NVRA." (Emergency Motion at 2 (quoting *A. Philip Randolph v. Husted*, 838 F.3d at 714).) But because neither court looked at the specific statutory language at issue here or considered the

Thus, after the Supreme Court's decision, the case came back to the district court to decide the issue of whether the confirmation notices' language violated the NVRA. The district court ruled on cross-motions for final judgment by Plaintiffs and Defendant and granted both parties' motions in part and denied both parties' motions in part. (R. 140, Opinion and Order, Page ID# 24730.) Plaintiffs' motion sought a permanent injunction, which the district court denied, except as regards a requirement that Defendant continue to use a confirmation notice that includes information for voters moving out of state on how to remain eligible to vote. (*Id.*, Page ID# 24755.) Plaintiffs appealed that Opinion and Order, (R. 142, Notice of Appeal, Page ID# 24758–60), and moved to enjoin Defendant pending that appeal both 1) to utilize the *APRI* Exception in the November 2018 election and 2) not to remove any voter pursuant to the Supplemental Process if the voter was sent a confirmation notice prior to 2016. (R. 143, Plaintiff's Motion for Injunction Pending Appeal, Page ID# 24761.) The district court denied this motion largely due to the reasoning in its prior Opinion and Order (which was relevant under the "likelihood of success on the merits" prong of its analysis as to the injunction pending appeal). (R. 144, Order, Page ID# 24771–73.) Thus, what we have is a pending appeal of the denial of a permanent injunction, and a question of whether Plaintiffs are entitled to relief before that appeal is decided.[2] Time is of the essence as the first form of relief being sought concerns whether Ohio must accept provisional ballots in the November 6, 2018 federal election pursuant to the *APRI* Exception and the second concerns a scheduled purge of the voter rolls after that election. (R. 42-4, Directive 1013-10 General Voter Records Maintenance Program, Page ID# 1602–09.)

---

issue in any meaningful way, both citations are obviously *dicta* that do not bind this Court. Defendant correctly summarizes in his Response to Plaintiffs' motion: "[J]ust as the Supreme Court's broad statement about Ohio's Supplemental Process following the NVRA to the letter does not require this Court to decide in Ohio's favor in this appeal, so too the 2016 [Sixth Circuit] panel's broad statements about non-compliance with the NVRA does not require this Court to decide in [Plaintiffs'] favor." (Response of Appellee at 17–18.)

[2]This Court has long recognized that "[t]he issuance of an injunction pending appeal is a matter within our discretion." *E. Greyhound Lines v. Fusco*, 310 F.2d 632, 634 (6th Cir. 1962); *see also* Fed. R. App. P. 8(a) (generally requiring an initial motion in the district court before such relief is sought).

**Factual Background**

The factual background is presented fully in the district court's Opinion and Order, and this Court need not repeat it here. Relevant to this analysis, we note only that the *APRI* Exception that Plaintiffs seek to enjoin Defendant to follow in the November election is a procedure for counting provisional ballots that Plaintiffs fairly summarize as follows:

> The APRI Exception require[s] Boards to count provisional ballots cast by voters purged under the Supplemental Process between 2011 and 2015 if the voter:
>
> (1) cast the ballot at their county's early voting location or at the correct polling location on Election Day;
>
> (2) continues to reside in the same county where they were previously registered; and
>
> (3) did not become ineligible by reason of felony conviction, mental incapacity, or death subsequent to the date on which their name was removed from the rolls.

(Emergency Motion at 8.)[3] Plaintiffs also note that the *APRI* Exception was used in every level of elections in Ohio between November 2016 and August 2018 and that in the 2016 Presidential Election over 7,500 eligible voters had their votes counted under the *APRI* Exception. (*Id.* (citing R. 133-4, Damschroder Decl., Page ID# 24169).)

**DISCUSSION**

The parties and the district court all agree that at issue here is how to balance the four relevant factors in connection with Plaintiffs' Emergency Motion for Injunction Pending Appeal, namely:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th

---

[3]The *APRI* Exception also required Boards to mail information to purged voters who request vote-by-mail ballots explaining that they must vote in person.

Cir. 1991). However, before we get to those factors, there are preliminary questions to answer about the nature of our review.

### 1. Plaintiffs' Burden and Standard of Review

This motion for an injunction pending appeal is filed directly with this Court. *See E. Greyhound Lines v. Fusco*, 310 F.2d 632, 634 (6th Cir. 1962). Under Rule 8(a)(2)(A)(ii) of the Federal Rules of Appellate Procedure, a party may make a motion for injunctive relief pending appeal directly to the court of appeals, so long as the motion "state[s] that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state[s] any reasons given by the district court for its action." Plaintiffs have done exactly that. After the district court denied their motion to enjoin Defendant, they rightly filed this motion with the appellate court on October 15, 2018. This is therefore not an appeal of the district court's decision, which would be subject to abuse of discretion review. *U.S. Student Ass'n Foundation v. Land*, 546 F.3d 373, 380 (6th Cir. 2008). Because we are not reviewing any district court decision or order, our review is *de novo*. Prior cases which consider the appellate court's standard of review when considering a preliminary injunction are not binding at this point in the proceeding, though they will be relevant when deciding the merits of the issue and evaluating the preliminary injunction itself. However, Defendant argues that the burden on Plaintiffs in this case is very high because 1) the motion is for relief pending appeal; 2) the relief sought is an injunction; and 3) the motion comes soon before an election. (Response of Appellee at 4.)

We do not find that these considerations require a more deferential standard of review in this case or a categorically higher burden on Plaintiffs. We will go through these three considerations in turn.

With respect to the first consideration, it is true that Plaintiffs' emergency motion seeks relief pending Plaintiffs' appeal of the district court's Opinion and Order. But the emergency motion itself is not an appeal. Defendant might be right that when we consider the district court's Opinion and Order on appeal we will need to give deference to the district court's

decision not to grant the permanent injunction.  However, that does not mean Plaintiffs carry a higher burden in this case.[4]

With respect to the fact that the emergency motion seeks an injunction rather than a stay, this does not change the Plaintiffs' burden in this case.  Defendant cites several decisions by Supreme Court justices sitting as a single circuit justice declining to grant injunctive relief pending appeal and noting that this is an "extraordinary relief" that a movant is not entitled to unless relief is "indisputably clear." *Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403 (2012) (Sotomayor, J., in chambers) (quoting *Lux v. Rodrigues*, 561 U.S. 1306, 1307 (2010) (Roberts, C.J., in chambers)).  However, a closer look at these cases shows that they rely at least in part of the Rules of the Supreme Court, which of course do not bind this Court.  *See, e.g.*, *Hobby Lobby*, 568 U.S. at 1403 (Sotomayor, J., in chambers) (citing the Supreme Court's then-Rule 20.1 stating that "Issuance by the Court of an extraordinary writ . . . is not a matter of right, but of discretion sparingly exercised.").  The decisions also discuss the burden for "obtain[ing] injunctive relief from a Circuit Justice" rather than any general purpose requirements for obtaining injunctive relief. *Lux*, 561 U.S. at 1307 (Roberts, C.J., in chambers).  Thus, these decisions seem to relate in part to rules and considerations specific to the Supreme Court, and while they are still persuasive authority to this Court, we find that no special burden on a plaintiff is necessitated by the posture of this case for the reasons discussed above.[5]

With respect to the final consideration Defendant cites, it is true that this emergency motion was filed soon before an election.  The Supreme Court has stated, "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  However, the Supreme Court has never outlined a

---

[4]This consideration might in some cases mean that a movant will have more difficulty establishing a likelihood of success on the merits under our first *Michigan Coalition* factor, but because the decision by the district court was based on legal conclusions, little if any deference is owed.  *See U.S. Student Ass'n Found. v. Land*, 546 F.3d at 380 (while this Court reviews a decision relating to an injunction for abuse of discretion, we review legal conclusions involved in that decision *de novo*).

[5]The difference between a stay and an injunction will, however, be relevant under the *Michigan Coalition* factors because, as Defendant points out, a stay returns the parties to the status quo whereas an injunction may change the status quo.  (Response of Appellee at 5.)

categorically higher burden for Plaintiffs who move for relief soon before an election, and this Court has explicitly rejected such a notion. *See Ohio Republican Party v. Brunner*, 544 F.3d 711, 718 (6th Cir. 2008) (en banc) ("This generalization [that courts should deny relief sought soon before an election] surely does not control many election-related disputes—keeping polls open past their established times *on* election day or altering the rules for casting ballots or provisional ballots *during* election week."), *vacated on other grounds by* 555 U.S. 5 (2008) (per curiam) (disagreeing with this Court's analysis on the likelihood of success on the merits issue).

The considerations Defendant raises do not change the Plaintiffs' burden in any categorical way in this case, nor do they change our standard of review. They may, however, be relevant under our four-factor test from *Michigan Coalition*, which this Court will now consider.

## 2. Analysis

Proceeding to the four factors, we note at the outset that "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition*, 945 F.2d at 153. This Court has summarized:

> To justify the granting of a stay, . . . a movant need not always establish a high probability of success on the merits. *Ohio ex rel. Celebrezze*, 812 F.2d at 290 (citing *Cuomo v. United States Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C.Cir.1985)). The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. *Id.* Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n. 4. (6th Cir.1977). For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits." *DeLorean,* 755 F.2d at 1229 (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir.1982)).

*Id.* at 153–54.

### Likelihood of Success on the Merits

Plaintiffs claim that Defendant's confirmation notice violated the NVRA because the notice required registrants to provide the same five fields of information—name, address, date of

birth, proof of identity, and signature under penalty of perjury—as required on Ohio's voter registration form. (R. 140, Opinion and Order, Page ID# 24751.) Plaintiffs argue that a requirement like this obviates the requirement that "[a] State shall not remove the name of a registrant from [the voter roll] on the ground that the registrant has changed residence unless the registrant . . . has failed to respond to a [confirmation] notice." 52 U.S.C. § 20507(d). The argument seems to be that if the requirements to remain on a voter roll are the same as the requirements to re-register to vote, in a sense the confirmation notice does remove the voter from the roll because it takes the same effort to get back on it through responding to the confirmation notice as it would to entirely re-register. However, this argument is unlikely to succeed on the merits because it does not take into account that to remove a registrant from the rolls under (d), the registrant must not only fail to respond to the confirmation notice but also not vote in an election during the relevant period. 52 U.S.C. § 205057(d)(1)(B)(ii). Arguably, it is not the functional equivalent of being purged from the rolls if a confirmation notice informs a registrant that he or she may remain on the rolls either by effectively re-registering *or* by voting in an election in the next four years. We do not conclusively decide the merits of this issue today, and Plaintiffs are free to raise additional arguments in their appeal of the district court's Opinion and Order, but Plaintiffs' argument with respect to this claim set forth in their emergency motion fails to demonstrate a likelihood of success on the merits.

With respect to another claim Plaintiffs raise in their motion, however, this Court is less sure that the district court came to the correct legal conclusions. Plaintiff argues that Defendant's confirmation notice, which stated that a registrant's "name may be removed" or "voter registration in Ohio may be cancelled" if the voter did not respond to the notice or engage in voter activity in the relevant period, failed to comply with the NVRA. The NVRA's provision concerning confirmation notices requires that they contain content "to the following effect:"

> If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date

of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

52 U.S.C. § 20507(d).  The district court emphasized language that the "registrant should return the card" to demonstrate that "the language of the statute is not as strong as Plaintiffs argue it should be."  (R. 140, Opinion and Order, Page ID# 24748.)  However, the "should" in that sentence in no way implies a lesser burden on the requirements of the state under the statute (syntactically it relates only to its subject, the registrant).  Rather, the statute states that there must be "a notice to the following effect: . . . if the registrant does not vote in an election during [the relevant] period [after not returning the pre-addressed return card] the registrant's name will be removed from the list of eligible voters."  52 U.S.C. § 20507(d)(2).  A statement that the individual "may be removed" is not a statement that the individual "will be removed" and a confirmation notice with such language appears at least in tension with, and likely in violation of, the NVRA.  The district court's analysis with respect to this claim misunderstands the statutory scheme, and Plaintiffs have at least a reasonable (if not a substantial) likelihood of success on the merits with respect to this issue.

Defendant raises two arguments that their confirmation notice complied with the statute. First, Defendant notes that the statute only requires content "to the following effect," which Defendant argues gives him leeway in crafting the specific language used in a confirmation notice.  Defendant argues that the language in Ohio's confirmation notices was "to that effect" even though it said "may" instead of "will."  (Response of Appellee 13.)  Defendant argues that "may" is more accurate in the context of Ohio's scheme and that "will" would in fact be inaccurate, given that there are other ways in Ohio for a registrant to remain on the rolls besides voting and returning the card, since any "voter activity" is sufficient and that term includes more than simply voting.  This argument is not very compelling as it is in tension with the clear statutory language of § 20507(d)(2).  The requirement that a confirmation notice inform a registrant that his or her "name will be removed" if he or she does not vote or return the card puts the voter on notice *both* that action is required in order to prevent a consequence *and* what that action is.  Defendant's notices stating that a registrant's "name may be removed" or "voter registration in Ohio may be cancelled" do neither of these: a registrant would not know that any action is required to prevent a consequence (as "may" implies discretion or uncertainty) and

would not know what action(s) could be taken to prevent the consequence. A letter from the IRS advising that "if you do not file Form X or Form Y, you will be audited" is not the functional equivalent of a letter stating that "if you do not file Form X or Form Y, you may be audited" because it does not put the recipient on notice of the urgency. And it would make it worse—not better, as Defendant argues—if the reason for the uncertain language in the second letter was because there was an unmentioned Form Z that the recipient also could have filed.

Defendant's other argument, that its confirmation notice complied with the Federal Election Commission Guide's sample language, is better, but Plaintiffs correctly point out that the Guide clarified in boldface, capital letters that any suggestions contained in the document were "**OFFERED WITHOUT THE FORCE OF LAW, REGULATION, OR ADVISORY OPINION. NO DECISION REGARDING THE IMPLEMENTATION OF ANY FORMS . . . SHOULD BE MADE ON THE BASIS OF THIS DOCUMENT ALONE**." (Plaintiffs' Reply at 3 (quoting Fed. Election Comm'n, Guide to Implementing the National Voter Registration Act of 1993: Requirements, Issues, Approaches, and Examples, at P-1 (1994), available at https://www.eac.gov/assets/1/1/Implementing%20the%20NVRA%20of%201993%20Requirements%20Issues%20Approaches%20and%20Examples%20Jan%201%201994.pdf).) This fact, combined with the language in Ohio's confirmation notices being clearly in tension with the statute make this argument less persuasive. Moreover, even acknowledging that this second argument has some merit, this Court finds that Plaintiffs still have at minimum a reasonable likelihood of success on the merits, and perhaps even a substantial likelihood. Thus, overall this first factor weighs in favor of Plaintiffs since they have demonstrated a likelihood of success on the merits on this claim.[6]

---

[6]Plaintiffs also argue that the confirmation notice's failure to explicitly state a deadline to respond violated the NVRA. This Court need not reach the question of likelihood of success on the merits because Plaintiffs have failed to show that any registrants who were given the allegedly deficient confirmation notices require the benefit of the provisional ballots that the *APRI* Exception affords, as these voters all remain on Ohio's voting lists. (Response of Appellee at 12.) These claims can be adequately addressed on Plaintiffs' appeal of the district court's Opinion and Order.

**Irreparable Harm if the Injunction Is Denied**

With respect to the second factor, Plaintiffs argue that "[a]n injunction requiring the votes of unlawfully purged voters to be counted this November and prohibiting further unlawful removals is necessary to prevent irreparable harm." (Emergency Motion 21.) The two requested forms of relief must be addressed separately because they involve very different forms of injury.

First, if this Court does not enjoin Defendant to use the *APRI* Exception in the upcoming election, Boards will not be counting provisional ballots cast by voters purged after receiving confirmation notices that may have been invalid under federal law. Without these provisional ballots, these individuals' votes have no chance of being counted. This Court has stated that "[a] restriction on the fundamental right to vote . . . constitutes irreparable injury." *Michigan State A. Philip Randolph Institute v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016). Thus, assuming there is harm in not accepting these provisional ballots (which there is if the voters were purged from the rolls due to defective confirmation notices), the harm would be irreparable.

However, with respect to the second form of relief Plaintiffs seek—enjoining Defendant from deleting voters from the rolls pending appeal—this injury is not imminent or irreparable. The purge is scheduled to take place *after* the election. Thus, the purge will have no effect on the election, so the injury at issue is not imminent like the injury that will occur if provisional ballots are not counted. Further, the injury that would result from deleting registrants from the rolls is not *irreparable* because this Court will be able to rule on this claim in the normal course of this appeal and if we hold for Plaintiffs these voters can be restored to the rolls.

Thus, this second factor favors Plaintiffs on their first form of relief sought but not on their second form of relief sought.

**Irreparable Harm if the Injunction Is Granted**

With respect to the third factor, Defendant would not be severely burdened by either remedy sought. Plaintiffs correctly note that "[t]he APRI Exception has been used in every federal, state, local, special, and primary election for the last two years" and that "Appellee has admitted that the APRI Exception is easily administered." (Emergency Motion 21.) Plaintiffs

also point out that Ohio has in the past implemented the *APRI* Exception in tight timeframes like this. (Plaintiffs' Reply at 6 (citing R. 126, Joint Stipulation and Order Related to the Special Election on August 7, 2018, Page ID# 23992–94).) Because the administration of implementing these procedures, even very quickly, will not greatly inconvenience Defendant, this factor favors Plaintiffs.

**The Public Interest**

With respect to the final factor, we do not have to rely on our own vague notions of what is or is not in the public interest, because Congress has told us what the relevant policy goals in the NVRA are in this area. As this Court has explained, "[t]he NVRA strikes a balance between removing fraudulent registrations while ensuring that legitimate voters are able to vote, and [a state] cannot remove names from its rolls in a manner that fails to respect this balance that Congress has drawn." *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 388 (6th Cir. 2008). There is a great public interest in not denying voters the opportunity to vote, in violation of the procedures of the NVRA, and a great public interest in not removing names from state rolls in violation of federal law. Without deciding the merits here, we can note that should Defendant prevail today but ultimately lose on the pending appeal, there is a strong likelihood that voters will have been denied their right to vote, and a chance that voters will be removed from Ohio's rolls, both of which would have been in violation of the NVRA. It is true that this Court has previously "emphasize[d] that the public interest in orderly election administration militates in favor of holding that the district court did not abuse its discretion." *Estill v. Cool*, 295 F. App'x 25, 27 (6th Cir. 2008). That case, however, involved a plaintiff who wanted to be included on the ballot as a sheriff candidate, and this Court also emphasized that "[i]n particular, the difficulty in altering the ballot printing and distribution at this late date . . . weighs heavily against an injunction." *Id.* So the interest in orderly election administration does not militate greatly for denying the injunction in this case. Thus, the public interest weighs toward granting the injunction.

**CONCLUSION**

In the final analysis, this Court holds that all four factors weigh for Plaintiffs on their first form of relief sought, the implementation of the *APRI* Exception. Plaintiffs have a reasonable, and perhaps even greater, likelihood of success on the merits of their claim that Defendant's confirmation notice did not adequately advise registrants of the consequences of failure to respond, as the NVRA requires. And the equitable factors weigh heavily in favor of granting the injunction. Plaintiffs aptly quote this Court's statement that where "the only harm that [a non-movant] assert[s] is an administrative burden that [he] admit[s] to be manageable" and there is also the "possibility that qualified voters may be turned away at the polls," the balancing of the equities favors granting the injunction. (Plaintiffs' Reply at 6 (quoting *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 387 (6th Cir. 2008).) Thus, this Court **GRANTS** Plaintiffs' motion insofar as it seeks to require Defendant to issue a directive to Ohio's county boards of elections instructing them comply with the *APRI* Exception procedures in the November 6, 2018 Federal Election.

With respect to Plaintiffs' other request for relief sought—an injunction that Ohio not delete any voters from the rolls under the Supplemental Process if the confirmation notice was sent prior to August 2016—the irreparability of the harm to Plaintiffs is not sufficiently strong to grant Plaintiffs this relief. This request for relief does not affect the upcoming election scheduled for November 6, 2018; and this issue can be addressed by the courts following the November 6, 2018 election. Though removal of voters from the rolls is certainly a great harm, it is not the kind of imminent, irreparable harm (like failure to record provisional ballots) that justifies relief under an emergency motion like this. We emphasize that today's order holds only that this Court does not grant this relief *pending appeal*. When we hear that appeal, this Court will have occasion to consider again whether this relief is justified—but we decline to grant this relief before full presentation of the issue on appeal. Thus, this Court **DENIES** Plaintiffs' motion insofar as it seeks to require Defendant not to remove any voter under the Supplemental Process if the confirmation notice was sent prior to August 2016.

Accordingly, the emergency motion for an injunction pending appeal is **GRANTED** in part and **DENIED** in part.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

SILER, Circuit Judge, concurring in part and dissenting in part. I concur with the majority's conclusion to deny the motion by the plaintiffs insofar as it seeks to prohibt the Secretary of State (hereinafter State) from removing any voter from the rolls under the Supplemental Process if the confirmation notice was sent prior to August 2016. However, I respectfully dissent from the order granting relief by enjoining the State to instruct the county boards of elections in Ohio to count certain provisional ballots that may be cast in the election to be held on November 6, 2018, in accordance with the "APRI Exception."

The pending motion by plaintiffs for an injunction pending appeal was filed less than a month before the November 2018 election. According to the State, the motion was filed "more than 10 days into early voting." Admittedly, this involves an appeal from a final judgment that the district court for the Southern District of Ohio entered on October 10. Thereafter, the district court denied a motion by the plaintiffs for an injunction pending appeal, which is the issue currently before our court. We should deny the relief requested.

First, we should always consider the caveat that "last-minute injunctions changing election procedures are strongly disfavored." *Service Employees Int'l Union Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Of course, there are exceptions to that general rule, but we should remember that early voting has already commenced in Ohio, which might cause some disruption if the provisional ballots are suddenly used with regard to some of the voters but not with others.

I agree with the majority that in granting the emergency motion for injunction pending appeal, the court should follow the criteria related in *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). However, I disagree with the majority's conclusion that because this is a motion for an injunction filed directly in our court, we are reviewing this de novo. In the case cited by the majority, *U.S. Student Ass'n Foundation v. Land*, 546 F.3d 373, 380 (6th Cir. 2008), we held that when reviewing a district court's

determination "'as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief,' we review for an abuse of discretion." *Id.* (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007)).

The primary criteria under the *Griepentrog* decision is the likelihood of success. I think that it is significant that the State will likely prevail. The district court has rendered its decision, following the prior decision in the Supreme Court. The issue which is foremost in the theory of the plaintiffs is that when the State sent its notice for purgation, it indicated that a registrant's "name may be removed" from the voter registration rolls. Plaintiffs claim that the failure to say that the "name will be removed" is the primary reason why the notification will not be upheld. I find that to be a very irrelevant distinction, and it did not impress the district court.

On the issue of the likelihood that the plaintiffs will be irreparably harmed absent a stay, the plaintiffs apparently have not identified a single eligible person who did not respond to the notice because he or she lacked certain information. Moreover, the public interest is not in granting the stay at this time, because early voting has commenced, and the State has issued its preliminary orders to the election authorities in their respective counties. There is no evidence that others will be harmed if the court grants or denies the stay. It is all speculation. The district court found no factors in *Griepentrog* to weigh in favor of the plaintiffs.

In conclusion, I would deny the request for the injunction pending appeal and let this court decide the merits in due course. I would like to discuss this in more detail, but time is running quickly between now and election day. It is imperative that we make a ruling, so that the party who loses the issue may seek further relief, if necessary.

ENTERED BY ORDER OF THE COURT

_____
Deborah S. Hunt, Clerk